Filed 2/2/16  P. v. Cervantes-Gonzalez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN CERVANTES-GONZALEZ,<br><br>    Defendant and Appellant. | F068223<br><br>(Super. Ct. No. 12CM2790)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted defendant Juan Cervantes-Gonzalez of multiple sexual offenses, including: sexual penetration of M.M., a 10-year-old (Pen. Code, § 288.7, subd. (b),[1] counts 1, 5, 7, 15, and 19), forcible sexual penetration of M.M. (§ 269, subd. (a)(5), count 2), forcible oral copulation of M.M. (§ 269, subd. (a)(4), counts 6, 8, 20), committing a lewd act upon M.M. (§ 288, subd. (b)(1), counts 11, 13, 17, 23), sexual intercourse with M.M. (§ 288.7, subd. (a), count 21), rape of M.M. (§ 269, subd. (a)(1), count 22), and domestic violence against V.H., a cohabitant (§ 273.5, subd. (a), count 25).[2]

Defendant was sentenced to 41 years plus 185 years to life in state prison.

Defendant makes the following claims on appeal: (1) the trial court prejudicially erred in admitting video-recorded statements by defendant about the sexual offenses because a Spanish-language interpreter improperly translated defendant's *Miranda* rights to him; (2) the prosecution breached a plea agreement with defendant; and, (3) defense counsel rendered ineffective assistance of counsel by failing to object to these issues at trial. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 2012, defendant moved in with his girlfriend V.H. and her three daughters, including 10-year-old M.M.

On July 31, 2012, V.H. discovered defendant in M.M.'s bedroom, on top of M.M., with his pants and underwear pulled down, kissing M.M.'s neck while his hand covered her mouth. M.M. was naked from the waist down. V.H. yelled, "What are you doing?" Defendant laughed as he pulled up his pants and underwear.

---

[1]All undefined statutory references are to the Penal Code unless otherwise indicated.

[2]In an amended information, the prosecution dismissed counts 3, 4, 9, 10, 12, 14, 16, 18, and 24, as well as all conduct enhancements.

V.H. attempted to run outside to get help but defendant grabbed her by her hair, pulled her back inside the house, pushed her up against a wall, and began to choke her. M.M. asked defendant, "'What are you doing?'" Defendant let go. V.H. ran outside and began to vomit blood.

Defendant admitted to V.H. he had digitally penetrated and orally copulated M.M. He told V.H., "'I used my mouth on the little girl's [vagina],'" and claimed 10-year-old M.M. had provoked him. He also stated, "'I'm a man and I am going to do what men do, she wanted it.'"

V.H. took M.M. and her other daughters to a nearby clinic, but defendant began following them. When he went inside a store to purchase beer, V.H. rushed the children into the clinic where an ambulance transported M.M. to the hospital.

Forensic nurse specialist Jennifer Pacheco performed a forensic examination on M.M. She observed a faint tear toward the bottom interior of M.M.'s vagina and noted M.M.'s vagina appeared to be very tender.

M.M. was interviewed at the multidisciplinary interview center, a facility where child victims of sexual abuse are interviewed by trained specialists. During the interview, she described multiple sexual offenses defendant committed against her during the time he had been living with her family.

At trial, M.M. testified defendant kissed her on her lips, touched her breasts, digitally penetrated her, orally copulated her, forcibly used her head and hand to touch his penis, and sexually penetrated her. Defendant told M.M. if she told V.H. about the incidents, he would kill her mother and sisters.

### *Defendant's Miranda Warning and Video-recorded Statements*

On July 31, 2012, defendant was arrested and questioned by police. Officer Juan Hernandez of the Hanford Police Department, a certified Spanish translator, read defendant his rights in Spanish pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The record provides the following English language translation of Hernandez's *Miranda* admonition:

> "Hernandez:  You have the … right to remain silent without doing an (inaudible).  [¶] … [¶]
>
> "Hernandez:  (inaudible)  You're here because you are under arrest [¶] … [¶]
>
> "Hernandez:  Everything you say can be against you in court  [¶] … [¶]
>
> "Hernandez:  You have the right to have an attorney present with you here when  [¶] … [¶]
>
> "Hernandez:  And if you can't … get an attorney there is an attorney they will give you.  Having these rights we are going to ask you a few questions."

Defendant acknowledged he understood his rights and Hanford Police Detective Cory Mathews began to question him.

Defendant had been living at V.H.'s apartment with her and her three daughters for the past four months.  The night before the incident, he and V.H. had been drinking.  Around 6:00 a.m. the next morning, defendant claimed M.M. kissed defendant on the mouth.  She led him by the hand into the kitchen where she kissed him again, put his hand on her breast, and orally copulated him.

Defendant claimed he touched M.M.'s vagina and she touched his penis.  M.M. went to her room to lie down and defendant went outside to smoke a cigarette.  When he finished, he went into M.M.'s room where he kissed her, touched and licked her breasts, and orally copulated her.  Defendant admitted he used his exposed penis to touch M.M.'s vagina, but he denied penetrating her.  V.H. then walked in and caught defendant with his pants down.

On August 30, 2013, during defendant's trial, the court addressed the parties regarding an issue raised by defendant's Spanish language interpreter, Jim Mena.  The

trial judge explained Mena approached him with a concern about whether defendant had understood his rights.  Based on Mena's interpretation, it is unlikely defendant understood his rights.

Defense counsel did not object or take any further action in response to Mena's concern.

### *Defendant's Plea Offer*

On August 22, 2012, defendant formally waived his right to a preliminary hearing.  Court-appointed defense counsel Laurence Myer informed the trial court defendant waived his right to a preliminary hearing to lock in an offer by the prosecutor of 30 years to life.  The offer was to remain open until the pretrial conference.

On November 28, 2012, the first pretrial conference was held.  Court-appointed defense counsel Brian Gupton represented defendant.  Gupton informed the trial court the offer was 45 years to life.  Defendant rejected the offer and the court continued his trial.

On April 12, 2013, a second pretrial conference was held.  Defendant was represented by Christopher Martens.  Martens advised the court a determinate offer was made in the neighborhood of 30 years to life, but defendant had rejected it.  The trial readiness conference date was confirmed.

On May 15, 2013, a substitution of counsel proceeding was held.  Defendant was represented by Justin Shimizu.  During the proceeding, the prosecutor stated the plea offer was 45 years to life.  Defendant did not respond to the offer.  The court rejected Shimizu's request for a continuance of defendant's trial.

On June 21, 2013, a third pretrial conference was held.  Shimizu, representing defendant at the conference, confirmed the prosecutor made an offer of 30 years to life, but advised the court defendant had rejected the offer.  The matter was set for trial readiness.

On August 26, 2013, a hearing was held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  Defendant was represented by Christopher Martens at the time of

5.

the hearing. Defendant sought new counsel on various grounds, one of which was based on the claim he was initially offered a plea deal of 30 years which was inexplicably changed to 40 years.

The court asked Martens about the prosecution's offer of 30 years to life which was to remain open until the pretrial conference. Martens advised the court defendant rejected the offer "numerous times," and explained "[t]here's never been an offer that's not been a life sentence, and so [defendant] has been unwilling to accept a plea that involved a life sentence so that's why we're here at trial." The court denied defendant's motion and his trial commenced.

## DISCUSSION

### 1. Defendant's *Miranda* Warning

Defendant claims a Spanish-speaking officer failed to properly translate and advise him of his *Miranda* rights during police questioning. During police questioning, defendant made inculpatory statements, admitting to perpetrating multiple sexual offenses against a minor. He argues if this court finds his claim was forfeited on appeal, defense counsel rendered ineffective assistance of counsel for failing to object to admission of the statements at trial. We reject both arguments.

In his opening brief, defendant scrutinizes the *Miranda* warning issued by Officer Hernandez as if construing a legal document. He essentially argues the transcript of his tape-recorded interrogation by police contains an improper translation of the *Miranda* warning actually administered to him and he was not properly advised of his right to remain silent and his right to an attorney.

Where there is a conflict between a statement recorded in a foreign language and an English language translation of the statement, the English language translation controls and is evidence of what was said. (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 304.) As such, it is the record that controls whether defendant was properly advised

6.

of his *Miranda* rights, not defendant's interpretation of the video. According to the record, defendant was admonished as follows: (1) you have the right to remain silent; (2) everything you say can be used against you in court; (3) you have the right to have an attorney present; (4) and if you can't get an attorney, one will be given to you.

We conclude defendant was properly advised of his right to remain silent and that his statements could be used against him in court. Although the warning does not indicate defendant's statements could *and would* be used against him, the warning was sufficient as phrased. A *Miranda* warning need not include specific and exact language to properly convey to a suspect his or her rights. (*Duckworth v. Eagan* (1989) 492 U.S. 195, 203.) The relevant inquiry is simply whether the warning *reasonably conveys* those rights. (*Ibid.*)

Moreover, this same warning was found to be sufficient in *People v. Johnson* (2010) 183 Cal.App.4th 253, 292 [*Miranda* warning proper where deputies advised defendant "her statements could be used in court but did not also state they 'will' be used in a court"].) We conclude the admonishment given to defendant reasonably conveyed he had the right to remain silent and his statements could be used against him in court.

Defendant also asserts his right to an attorney was not properly conveyed to him. He specifically argues the *Miranda* warning given did not indicate he had the right to have an attorney present before and during questioning and that if he could not afford an attorney, one would be appointed to him. A *Miranda* warning must convey a suspect has the right to an attorney present *before* and *during* questioning, even if the suspect is indigent and cannot afford to hire one. (*Duckworth v. Eagan*, *supra*, 492 U.S. at p. 204; *People v. Lujan* (2001) 92 Cal.App.4th 1389, 1399.)

We need not resolve whether defendant's *Miranda* rights were, indeed, lost in translation, because defense counsel failed to object below and, as a result, defendant's claim is forfeited on appeal. It is well-settled that to preserve a *Miranda* claim on appeal, a defendant must make an objection at the trial level. (*People v. Jackson* (1989) 49

Cal.3d 1170, 1188; *People v. Milner* (1988) 45 Cal.3d 227, 236; *People v. Rogers* (1978) 21 Cal.3d 542, 548.)  A failure to timely object will render the issue forfeited upon review.  (Evid. Code, § 353.)

Not only did defense counsel here fail to object to the admission of defendant's tape-recorded statements, he used the statements in closing argument to assert defendant did not use force, fear, duress, or menace to accomplish the charged offenses, and he did not sexually penetrate M.M.  Plainly, defendant cannot now argue introduction of the statements was error.

As a fallback position, defendant argues defense counsel was ineffective for failing to object to the admission of his statements.  We conclude his claim is without merit.

A defendant claiming ineffective assistance of counsel in violation of his Sixth Amendment right to counsel must show (1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) the deficient performance resulted in prejudice by depriving the defendant of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *In re Jones* (1996) 13 Cal.4th 552, 561.)  It is the defendant's burden to establish, based on the record and on the basis of facts, defense counsel was ineffective.  (*People v. Mattson* (1990) 50 Cal.3d 826, 876–877.)

On appeal, we look to the record to see if there is any explanation for the challenged aspects of representation.  The record must affirmatively demonstrate no rational tactical purpose for the challenged omission.  (*People v. Ray* (1996) 13 Cal.4th 313, 349.)  Where the reasons for defense counsel's actions are not readily apparent from the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the record discloses """"no conceivable tactical purpose"'" for counsel's act or omission."  (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)  As a result, a defense counsel's failure

8.

to object will rarely establish ineffective assistance of counsel. (*People v. Avena* (1996) 13 Cal.4th 394, 444–445.)

The Attorney General argues defense counsel's failure to object was tactical: defense counsel permitted defendant's statements to be used in his closing argument without exposing defendant to cross-examination from testifying in his own defense. In his closing argument, defense counsel argued defendant did not use force, fear, duress, or menace in the commission of the charged offenses, and he asserted the statements were evidence of the fact defendant did not sexually penetrate M.M.:

> "Now, why you have a lesser included [offense is] because [defendant] gave a statement to the police. It was recorded on video, you were able to watch it, and you were able to hear or read a translation of his statement. And in his statement he gave a very open, full and complete statement of what happened. In his statement what he told you is that he did not have sexual intercourse … with MM. What he told you, what he told the police and what you heard was that he rubbed his part on her part. And that's why you have the lesser included, because the testimony of any one witness can prove any fact in this case, and you heard testimony through the video that that's what happened."

The use of force, fear, duress, and menace, in addition to the allegation defendant sexually penetrated M.M., formed the basis of half of the charges against defendant. If defendant's statements were accepted by the jury, he would have faced a considerably reduced prison term compared to his maximum exposure. Thus, it is readily apparent from the record defense counsel had a reasonable and valid tactical basis for failing to object to the admission of defendant's tape-recorded statements.

Defendant's claim the trial court admitted his tape-recorded statements in violation of his *Miranda* rights is forfeited. In addition, we find no merit to his claim of ineffective assistance of counsel. Consequently, we need not remand this case to the trial court for further determination of whether a *Miranda* violation occurred, as defendant urges us to do.

**2.     Defendant's Claim of Prosecutorial Breach Is Without Merit**

In defendant's final claim on appeal, he argues the prosecution breached a plea agreement on November 28, 2012, and May 15, 2013, to keep an offer of 30 years to life open. Defendant agreed to waive his right to a preliminary hearing provided an offer of 30 years to life remained open until his pretrial conference. Defendant asserts if his claim was forfeited on appeal, defense counsel rendered ineffective assistance of counsel. We find no merit to either contention.

On the record before us, defendant has failed to establish prosecutorial breach. Although it appears the prosecution's offer of 30 years to life was changed to 45 years to life at defendant's first pretrial conference on November 28, 2012, defendant concedes he was offered a deal of 30 years to life at both his second and third pretrial conferences, which he rejected. As defense counsel Martens explained to the court, defendant rejected the offer of 30 years to life "numerous times," unwilling to accept a plea that involved a life sentence. Accordingly, we reject defendant's claim of prosecutorial breach.

Defendant also asserts defense counsel rendered ineffective assistance of counsel by failing to communicate the prosecution's offer of 30 years to life to him on two occasions and by failing to object to the subsequent offer of 45 years to life. Here, again, defendant has failed to prove incompetence of counsel.

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." (*Missouri v. Frye* (2012) __ U.S. __ [132 S.Ct. 1399, 1409].) Even assuming defense counsel erred by failing to object to the prosecution's offers of 45 years to life on November 28, 2012, and May 15, 2013, nothing in the record supports defendant's assertion he would have accepted a plea of 30 years to life. Defendant concedes he was presented with the prosecution's offer of 30 years to life on April 12, 2012, and June 21, 2012, but rejected it. Additionally, defense

10.

counsel Martens advised the court defendant rejected the offer because he was unwilling to accept a plea that involved a life sentence. Thus, defendant cannot establish a reasonable probability he would have accepted the offer of 30 years to life.

Defendant has failed to prove he received ineffective assistance of counsel. Because we find no ineffective assistance of counsel, we also deny his request to remand the matter for an evidentiary hearing on the issue.

**3. Defendant's Sentence Under Section 288.7, Subdivision (a) Was Improper**

The Attorney General contends the trial court erred in sentencing defendant under section 288.7, subdivision (a) to 25 years to life. We agree.

Pursuant to the first information, filed September 5, 2012, count 1 was originally charged as follows: "[A] violation of Section 288.7(a) … in that said defendant(s): did unlawfully, being a person over the age of 18 years of age or older engaged in sexual intercourse or sodomy with a child who is 10 years of age or younger in violation of Section 288.7(a) …." The prison term for a violation of section 288.7, subdivision (a) is 25 years to life.

On August 21, 2013, the information was amended and count 1 was modified, changing the alleged violation from section 288.7, subdivision (a), to subdivision (b), and striking the word "intercourse" and adding in the word "penetration." Section 288.7, subdivision (b) provides that anyone who engages in sexual penetration with a child is subject to a prison term of 15 years to life. Defendant was ultimately convicted of this felony violation and, therefore, should have been sentenced to 15 years, not 25 years, pursuant to count 1.

We agree with the Attorney General, defendant was improperly sentenced pursuant to count 1. We will remand this matter back to the trial court for resentencing.

11.

## DISPOSITION

The prison term imposed on count 1 is reversed, and the matter is remanded for resentencing consistent with this opinion.  In all other respects, the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
FRANSON, J.