Filed 8/14/20  P. v. Moffett CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN MOFFETT,<br><br>    Defendant and Appellant. | D076344<br><br><br><br>(Super. Ct. No. SCS305752) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia Garcia, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

On June 20, 2019, a jury convicted Brian Moffett on one count of child abuse (Pen. Code,[1] § 273a, subd. (a)) and one count of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found true the accompanying allegations that Moffett used a deadly weapon (§§ 1192.7, subds. (c)(8), (23), 12022.7, subd. (a)) in commission of both crimes. Moffett now appeals arguing that the trial court erred by giving the flight instruction (CALCRIM No. 372), and that the imposed fines, fees, and assessments, which he did not object to at sentencing, violated his due process rights because he did not receive an ability to pay hearing.

We find the use of CALCRIM No. 372 to be proper, and Moffett forfeited his challenge to the fines, fees, and assessments by failing to object. Accordingly, we affirm.

## BACKGROUND

On December 31, 2018, Wesley Anderson looked out his bedroom window after hearing loud banging coming from his neighbor's fence. Anderson saw Moffett pulling and banging on his neighbor's gate. Anderson ran downstairs and yelled at Moffett to, "Get out of here," and "What are you doing?" Moffett replied he had to free Anderson's neighbor's dog. Moffett tried to climb over the fence, which prompted Anderson to tell his wife to call 9-1-1. Anderson's neighbor, A.C., a teenager, came out to investigate the noise coming from A.C.'s front yard.

Upon A.C. stepping outside, Moffett began yelling at A.C. to let A.C.'s dog out. A.C. responded that he was not going to let his dog out and warned Moffett to leave or A.C. would call the police. A.C. turned around to enter his house, and Moffett jumped over the fence, tackled A.C., and struck A.C.

---

[1] Future statutory references are to the Penal Code unless otherwise designated.

2

multiple times on the head. During the attack A.C. felt Moffett striking him with a metal object in his hands, and ultimately attempt to shove something into A.C.'s eye. A.C. called out for his neighbor, Anderson, for help.

Anderson ran back inside his house to get his gun, worried that Moffett was going to kill A.C. By the time Anderson returned, Moffett had stopped his attack on A.C. and was exiting A.C.'s yard. Anderson pointed his gun at Moffett and ordered Moffett to get on the ground and surrender. Moffett ignored Anderson and continued to walk away. Anderson continued to follow Moffett for a few blocks until he gave up because Anderson had no shoes, no phone, and no one knew where he was. Anderson returned to find his wife administering first aid to a bloodied A.C., and he waited to give the police a description of Moffett and the direction in which Moffett was fleeing. Five separate police units searched the area described by Anderson but were unable to find Moffett.

On January 9, 2019, A.C. saw Moffett walking along Bonita Road. A.C. called his mother and the two of them followed Moffett and called the police. Following a curbside identification by A.C., Moffett was arrested.

At trial Moffett presented no defense, no witnesses, and he did not testify. The prosecutor requested CALCRIM No. 372 over Moffett's objection arguing that Anderson was attempting to make a citizen's arrest, and Moffett's refusal to comply warranted the flight instruction. The trial court agreed stating, "It's not necessarily required that it be that the defendant is fleeing from law enforcement. What is important is that he is acting with the purpose of avoiding observation or arrest."

After a brief deliberation, the jury found Moffett guilty of child abuse and assault with a deadly weapon. (Pen. Code, §§ 273a, subd. (a), 245, subd. (a)(1).) Moffett was sentenced to a total of nine years and ordered to

pay a restitution fine of $2,100 (Pen. Code, § 1202.4, subd. (b)); a parole restitution fine of $2,100, which was stayed (Pen. Code, § 1202.45); a court security fee of $80 (§ 1465.8); a critical needs fee of $60 (Gov. Code, § 70373); and a criminal justice administration fee of $154 (Gov. Code, § 29550).

## DISCUSSION

### A.  The Trial Court Did Not Err in Issuing CALCRIM No. 372

Moffett argues the trial court erred in issuing CALCRIM No. 372 because Moffett, "simply walked away from the area that he had a dispute with A.C.  At no point was he being pursued by law enforcement. . . .  There is no evidence appellant left in a hasty manner[.]"  We reject Moffett's arguments and affirm.

The court instructed the jury on CALCRIM No. 372 as follows:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."

CALCRIM No. 372 is proper if there is any evidence from which a juror could reasonably infer a defendant's departure from the crime scene was motivated out of consciousness of guilt.  (*People v. Cage* (2015) 62 Cal.4th 256, 285.)  Furthermore, flight does not require literal running, but a purpose to avoid being observed or arrested.  (*Ibid.*)

Here, despite Moffett's characterization as merely walking away from the crime scene, there is ample evidence to support a reasonable inference that Moffett fled to avoid being arrested.  Anderson told his wife to call the police before retrieving his gun out of fear that Moffett might kill A.C.  Anderson pointed his gun at Moffett demanding Moffett surrender and get on the ground.  Furthermore, Anderson continued to follow Moffett for several

4

blocks without shoes to try and get Moffett to surrender, and ultimately gave police a description of where to search for Moffett. Moffett contends that it is also possible that he was acting out of fear and trying to get away from an armed Anderson. However, varying theories that might explain a defendant's behavior leaving a crime scene go to the weight of the flight evidence, not its admissibility. (*People v. Perry* (1972) 7 Cal.3d 756, 773-774, overruled on other grounds by *People v. Green* (1980) 27 Cal.3d 1, 28.)

Moffett further argues that there was no evidence he left in a hasty manner or tried to hide from the police. However, the flight instruction does not require a hasty escape from police, but to avoid arrest or observation. (*People v. Cage*, *supra*, 62 Cal.4th at p. 285.) Furthermore, running from a crime scene could have drawn more attention to Moffett making it more difficult for Moffett to evade Anderson and the police. The commotion caused by running could call attention to Moffett and create immediate suspicion; a person calmly walking is less memorable than someone running erratically at full sprint.

Finally, Moffett suggests the flight instruction lessened the burden of proof and violated his due process rights because the instruction allows a permissive inference of awareness of guilt. However, this argument has been thoroughly rejected. (See *People v. Price* (2017) 8 Cal.App.5th 409, 455-458; *People v. Boyce* (2014) 59 Cal.4th 672, 691; *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1157-1159.) As *Price* points out, no part of CALCRIM No. 372 is worded so strongly that it would lessen the burden of proof; the final sentence refutes any such assertion. (*Price*, at p. 455.)

B. Moffett Forfeited His *Dueñas* Claim by Failing to Timely Object

Moffett argues the trial court denied due process by imposing fees at his sentencing hearing without examining his ability to pay. Moffett bases

his argument on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held fines, fees, and assessments violated due process of indigent defendants who are unable to pay. Moffett concedes that he did not object to the court's imposition of fines, fees, and assessments at his sentencing hearing. As a result, Moffett has forfeited this issue on appeal.

Moffett had a statutory right to object to the imposition of restitution fines, totaling $2,100, prior to *Dueñas* under section 1202.4, subdivision (c). Moffett's silence is a typical example of forfeiture. (See, e.g., *People v. Nelson* (2011) 51 Cal.4th 198, 227 [defendant forfeited his ability to challenge a restitution fine of $10,000 when he did not object at sentencing].) Because Moffett did not object to the $2,100 restitution fine, he would not have objected to the much smaller $294 in fees. (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 ["As a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."].) Therefore, we find Moffett has forfeited his right to challenge these assessments on appeal.

Alternatively, Moffett argues that if we find forfeiture, then we must necessarily find ineffective assistance of counsel. We disagree. The two-prong test for ineffective assistance of counsel requires defendant to show that counsel was deficient, and this deficiency prejudiced the defendant as to deprive the defendant of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) However, the current record does not establish either prong of the *Strickland* test. There is no information that would enlighten us as to why trial counsel did not object or ask for an ability to pay hearing. It is possible that trial counsel felt that the fines, fees, and assessments were within Moffett's ability to pay. Unlike Dueñas, Moffett is a single man in his

6

30's with no children. Furthermore, as the Attorney General points out, assuming the minimum monthly pay rate for prison wages applied at $12 a month, Moffett would earn more than half of the restitution fine during his nine-year sentence.

Finally, claims involving ineffective assistance of counsel accompanied by a silent record are more appropriately decided in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:



HALLER, J.



GUERRERO, J.